(Decided 23d June, 1885.)

THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND YORKTOWN TURNPIKE ROAD *vs.* THE STATE OF MARYLAND.

*Indictment of a Turnpike Company for a Nuisance—Demurrer to Indictment—Appeal under the Act of 1872, ch. 316, as modified by the Act of 1884, ch. 132—Insufficient ground for Reversal—Insufficient excuse for Neglect in Keeping a Turnpike road in Repair—Pecuniary inability of a Corporation to Abate a Nuisance—Instruction of the Jury in Criminal Cases—Obligation of a Turnpike Company Incorporated under the Act of 1804, ch. 51.*

Where a demurrer to an indictment is overruled, and the case is tried upon the plea of not guilty, and a verdict of guilty is rendered, and an appeal is taken by the traverser under the Act of 1872, ch.

316, as modified by the Act of 1884, ch. 132, from certain rulings of the Court, this Court will not pass upon the questions raised by the demurrer, except at the request of counsel both for the State and accused, the same not being before it for review.

Where a question allowed to be put to a witness is excepted to, but the answer is not given, this Court will not reverse the ruling excepted to, there being nothing to show that the exceptant was in any way prejudiced thereby.

On an indictment against a turnpike company for permitting its road to fall into such a ruinous and defective condition for want of due repair in the places specified in the indictment, as to amount to a public nuisance, the accused will not be allowed by way of defence, to show that other turnpike roads are constructed in a manner like that in which its road is constructed, in having the artificial or macadamized part thereof of a different level in many places from the common earth roads at the sides.

It is no answer to an indictment for a nuisance, that the corporation through whose neglect of duty it existed, is pecuniarily unable to abate it.

In criminal cases the Court is not bound to instruct the jury, they being by a constitutional provision made the judges of both law and fact in such cases; and rarely or never does, except upon consent and request of counsel both for the State and the accused, or the jury themselves.

A turnpike company incorporated under the Act of 1804, ch. 51, is not required to keep the whole space or width of its road of sixty-six feet, perfectly level at every point, nor is it bound to construct the macadamized part of such road of sufficient width to allow the passing by other vehicles of hay-wagons loaded to an extraordinary and unusual extent.

APPEAL from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial of this case, Charles B. McLean, county surveyor of Baltimore County, a witness produced and examined on the part of the State, was asked: "Do you know a part of the York Turnpike,

situated in the eighth election district of Baltimore
County, and between the twelfth and sixteenth mile stones
on said turnpike road, and near the lane leading to Ash-
land, and about three hundred yards south of said lane,
and if you do, state what you know with regard to the
condition of such part?" The question was objected to
by defendant's counsel, and the Court (PHELPS, J.,) over-
ruled the objection, and allowed the question to be put;
to this ruling of the Court the defendant excepted.

*Second Exception.*—Charles B. McLean, a witness ex-
amined on the part of the State, having testified that the
whole width of the said turnpike road at one of the places
alleged to be described in the indictment, was fifty-seven
feet from fence to fence, of which space the central portion,
about twenty-two feet in width, consisted of an artificial
road-bed, macadamized, the State's Attorney proposed to
ask him to testify as to the condition of the said whole
space of fifty-seven feet in width, to which the defendant's
counsel objected, and insisted that the testimony should be
confined to the said artificial road, but the Court overruled
the objection, and permitted the witness, under the ex-
amination of the counsel for the State, to give testimony
as to the condition of the entire space, fifty-seven feet
wide; to this ruling of the Court, and allowance of the
said testimony as evidence to go to the jury, the defendant
excepted.

*Third Exception.*—Charles B. McLean, a witness pro-
duced on the part of the State, having had his attention
directed to a certain portion of the said turnpike road
situated about three hundred yards south of the Ashland
lane, testified in regard thereto that the macadamized
part, twenty-two feet wide, was from two and a half to
four feet higher than the side roads, and descended in
places thereto at an angle of about eighty degrees, and
the said witness was then asked by the State's Attorney
the following question: "What is its condition with

reference to the safety of the travelling public in the use of it?" To this question the defendant objected, but the Court overruled the objection, and permitted the question to be put to the said witness; to this ruling of the Court the defendant excepted.

*Fourth Exception.*—John Crowther, Jr., a witness examined on the part of the State, was asked by the State's Attorney to describe the condition of a certain part of the said turnpike road, beginning about three hundred yards south of Ashland lane, and running south from said point one hundred yards, comprehending the whole space or width of about sixty-six feet, and offered to prove by the said witness that it was not possible at that spot to drive across said whole space with a wagon transversely from one side to the other, inclusive as well of the side roads of natural earth as of the central artificial and macadamized road of twenty feet or twenty-two feet or thereabouts in width; to this question, and to the introduction of the offered evidence the defendant objected, but the Court overruled the objection, and permitted the question to be put, and the offered evidence to be introduced; to this ruling of the Court the defendant excepted.

*Fifth Exception.*—The witness, John Crowther, Jr., testified that at the said place, the artificial road was about three or four feet above the side road, so that it was impossible at that point, to get with a wagon from one to the other, without upsetting it. And the State's Attorney then asked the said witness the following question: " What was the condition of the said road at said place, as to safety?" To this question, the defendant objected, but the Court overruled the objection, and permitted the question to be asked; the defendant thereupon excepted.

*Sixth Exception.*—The witness John Crowther, Jr., testified, that in his opinion, the said turnpike road at the place referred to, was, in its entirety, unsafe, in consequence of the fact, that the surface of the artificial road in

the centre, upwards of twenty feet in width, was raised about three feet above the surface of the dirt side roads, so that a horse and carriage could not, (except at intervals of about fifty yards,) pass from the said central road to the side roads, or from one of the side roads, to the said central road. The witness then further testified, that the said artificial road at the place in question, was itself in good condition. And thereupon, another witness produced on the part of the State, was asked as to the condition of the said side road at said place; to this question the defendant objected, but the Court overruled the objection, and permitted the question to be put; the defendant excepted.

*Seventh Exception.*—Col. Walter Franklin, a witness called and examined on the part of the State, to sustain the charge of the indictment, was asked by defendant's counsel, whether it was customary in Maryland, and elsewhere, for turnpike roads in country districts similar in character to that through which that portion of the turnpike road of the defendant, which is between the twelfth and sixteenth mile stones, and in the vicinity of the lane leading to Ashland, passes, to be constructed in a manner like that in which the said defendant's road has been constructed, and particularly with reference to a difference of level between the artificial road-bed and the side roads; to this question the State's Attorney objected, and the Court sustained the objection, and refused to allow the question to be put; the defendant excepted.

*Eighth Exception.*—Col. Walter Franklin was asked by the defendant's counsel, what would have to be done in order to remedy the alleged grievance of the difference of level between the artificial or made road in the central part of the said turnpike road, and the spaces at the side occupied by the side roads of natural earth, and he testified that it would be necessary either to fill up the sides or regrade the artificial road, and that the latter course would be the least expensive of the two. The defendant

then proposed to examine the witness as to the cost of such regrading, and to prove that it would be enormously expensive. To the introduction of this offered evidence the State's Attorney objected, and the Court sustained the objection, and refused to permit such evidence to be introduced by the defendant now ; to this ruling the defendant excepted.

*Ninth Exception.*—Stated in the opinion of the Court.

*Tenth Exception.*—The State's Attorney, on behalf of the State, offered in evidence to the jury the Act of 1804, ch. 51, under which the defendant was incorporated, which was read to the jury ; and he then offered to read to the jury the Act of 1801, ch. 77. To the admission in evidence of the said last mentioned Act of 1801, ch. 77, the defendant objected, and the Court overruled the objection, and permitted the Act to be given in evidence to the jury ; to this ruling of the Court the defendant excepted.

*Eleventh Exception.*—Stated in the opinion of the Court.

*Twelfth Exception.*—Some witnesses upwards of sixty years of age, produced by the defendant, testified that as far back as fifty or more years ago, and as far back as they could recollect, the character of the said turnpike road as to occasional differences of level between the middle and macadamized portion, and the earth side roads was not materially different from what it is now, and that the said condition of things had continued without much change to the present time; that in certain places the side roads had become worn down to a greater depth than formerly, below the artificial road, and in places the side roads had become filled up, partially by deposits washed down from higher points; but that taking the turnpike in its entirety, there was no observable difference between the state of things now existing as to the relative elevations of the middle or artificial road, and the side roads; that in many places, including the spots in regard to which tes-

timony had been given on the part of the State, where a wagon cannot now be driven transversely from one side of the sixty-six feet to the other, or from the side to the artificial road, or *vice versa*, the same thing was true as far back as these witnesses could remember; the witnesses did not think that the greater part of the whole length of the said turnpike road, was in this condition, but whatever the proportions might be, it was not materially different anciently from what it is now. The defendant then offered to prove that other turnpike roads constructed under the Act of 1804, ch. 51, under which the defendant was incorporated, namely, the Reisterstown Turnpike Road, and the Fredericktown Turnpike Road, were made, and have been hitherto maintained in a similar manner to the road of the defendant in the particulars complained of by the State under the present indictment, that is to say, in having an artificial road of about twenty feet in width in the middle, graded and macadamized, of a different level at the surface in many places from common earthen roads at the sides, and so that passage is not everywhere practicable by wagons and carriages from the said artificial roads, the middle, to the said side roads, nor *vice versa;* the State objected to the introduction of the evidence so offered, and the Court sustained the objection; the defendant excepted.

*Thirteenth, Fourteenth,* and *Fifteenth Exceptions.*— Sufficiently set out in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, RITCHIE, and BRYAN, J.

*Arthur W. Machen,* and *I. Nevett Steele,* for the appellant.

*Charles B. Roberts, Attorney-General,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case the appellant corporation was indicted for permitting its turnpike road to fall into such a ruinous and defective condition for want of due repair, in the places specified in the indictment, as to amount to a public nuisance. There was a demurrer to the indictment which was overruled. The case was then tried upon the plea of not guilty, and the jury rendered a verdict of guilty. In the course of the trial, exceptions were taken by the traverser to certain rulings of the Court, and this appeal has been taken therefrom, under the Act of 1872, ch. 316 as modified by the Act of 1884, ch. 132. This law provides that no judgment shall be rendered against the accused, if found guilty, until this Court shall have determined upon the exceptions. There has therefore been no final judgment in the case, and the questions arising upon the demurrer are not now before us for review. *Kearney vs. State,* 46 *Md.,* 422; *Forwood vs. State,* 49 *Md.,* 538; *Johns vs. State,* 55 *Md.,* 350. We have sometimes, at the request of counsel on both sides, passed upon the demurrer under such an appeal, but here counsel for the State have declined to unite in such request, and have insisted that the exceptions alone shall now be considered and determined. We shall therefore follow, in this case, the strict line of duty prescribed by the statute, and our own previous decisions to which we have already referred.

The exceptions are fifteen in number. The defect in the road, which, it is alleged, constituted the nuisance, and which the State sought to establish by its proof, is the same as that relied on in the civil suit we have just decided, of Crowther against the same corporation, and of course what has been said in that case must govern the determination of the same or similar questions arising in this.

1st. In the first, third, fifth and sixth exceptions the same question is presented as that presented by the first

exception in *Crowther's Case* and the rulings in these exceptions are affirmed for the reasons there stated. It may be added that it does not appear that the questions allowed to be put in some of these exceptions were ever answered or how they were answered, and to these the remarks made by this Court in *Lawson vs. Price*, 45 *Md.*, 133, are directly applicable. The Court in that case said : " The question allowed to be put to the witness is excepted to, but the answer which may have been wholly unimportant or immaterial, is not given. Before we can reverse the ruling excepted to we must be able to see that the party really has ground for exception, and may have been injured by what was done. For aught that appears, the answer of the witness may have been more favorable to the appellant than to the appellee."

2nd. The rulings in the seventh, tenth, and twelfth exceptions are the same as those affirmed in the fourth and fifth exceptions in *Crowther's Case*, and are therefore also affirmed for the same reasons.

3rd. We find no substantial error in the ruling in the second exception. The Court allowed a witness to prove the condition of the whole width of the road (fifty-seven feet) in a certain locality within the limits described in the indictment, but what his testimony as to its condition was, whether favorable or not to the traverser, nowhere appears. There can be no reversal on account of this ruling because there is nothing to show that the traverser was in any way prejudiced thereby.

4th. In the eighth exception the Court refused to allow the corporation to prove that it would be enormously expensive to remedy the alleged grievance of the difference in level between the artificial and side roads by grading down the former or filling up the latter. It is no answer to an indictment for a nuisance that the corporation, through whose neglect of duty it existed, is pecuniarily unable to abate it. *Winship vs. Enfield*, 42 *N. H.*, 197 ; *Erie*

*City vs. Schwingle,* 22 *Penn.,* 389. Besides, we have said in *Crowther's Case* that such differences in level may be permitted to exist in certain localities, provided the dangerous places are properly safe-guarded. This ruling is therefore affirmed.

5th. Nor do we find any error in the ruling made in the eleventh exception. The locality of the nuisance, as described in the indictment, is between the twelfth and sixteenth mile-stones, on the road out from Baltimore City. The license from the Governor, dated the 19th of March, 1810, which the Court refused to admit in evidence, permits the company to erect toll-gates, and describes that part of the road to which it relates, as completed in a workmanlike manner agreeably to the provisions of the charter. But it covers a portion of the road commencing from the end of the twenty miles already licensed. It is plain therefore that this license refers to a portion of the road many miles distant from that in which the indictment charges the nuisance to be. Such a license was clearly irrelevant and inadmissible in evidence in this case·

6th. The thirteenth, fourteenth and fifteenth exceptions. were taken to the refusal of the Court to grant certain instructions to the jury asked for by the traverser's counsel. This is a criminal case, and it is enough to say in reference to these exceptions, that according to the settled law and practice in this State, the Court is *not bound* to instruct the jury (they being by a Constitutional provision made the judges of both law and fact in criminal cases,) and rarely or never does, except upon consent and request of counsel, both for the State and the accused, or the jury themselves. *Wheeler vs. State,* 42 *Md.,* 569; *Broll vs. State,* 45 *Md.,* 360; *Forwood vs. State,* 49 *Md.,* 537. These rulings are therefore affirmed.

7th. This leaves for consideration the fourth and ninth exceptions, and we have purposely left them to the last,

Baltimore and Yorktown Turnpike Road *vs.* State.

because we are constrained to hold that there is error in each of them.

In the fourth the Court allowed evidence to go to the jury that at a certain place in the road within the locality covered by the indictment, it was not possible to drive across the whole space or width of the road of sixty-six feet with a wagon *transversely* from one side to the other. We have said in *Crowther's Case* it was not incumbent upon the corporation to keep this *whole space* perfectly level at every point. But from this evidence which the Court permitted to go before them the jury may well have thought that such was the obligation imposed upon the company by their charter, and that the road was a nuisance if not thus kept level throughout its entire breadth and in every place. This ruling is therefore reversed.

In the ninth exception the Court permitted evidence to go to the jury that it was impossible for a loaded hay-wagon of the kind *sometimes* driven upon this turnpike, and any other vehicle drawn by horses to pass each other on the artificial road of twenty or twenty-two feet in width. There may have been other evidence not appearing in the record which would have justified the Court in allowing this to be given, or the exception may have been by inadvertence so drawn as not to present correctly the actual ruling made by the Court; but as it stands, the allowance of this evidence carried with it to the jury a practical declaration that the company was bound to construct the macadamized part of the road of sufficient width to accommodate the passing by other vehicles, of hay-wagons loaded to an extraordinary and unusual, and in fact to any possible breadth that a load of hay on any sort of wagon could be made to extend. We do not think their charter imposes any such duty upon the company, and this ruling is therefore reversed.

While all the other rulings are affirmed, the reversal of these two requires the case to be re-tried.

*Rulings affirmed in part, and*
*reversed in part, and cause*
*remanded for a new trial.*

(Decided 23d June, 1885.)