# ANDREW GILLESPIE ET AL. *vs.* THE STATE OF MARYLAND.

*Criminal Law—Qualification of Jurors—Questions on Voir Dire—Admissibility of Letter to Newspaper to Contradict Witness.*

Upon impanelling a jury to try certain defendants for unlawful assembly, a juror had testified on his *voir dire* that he had not formed or expressed any opinion as to the guilt or innocence of the parties, and that his mind was free from any prejudice which might prevent him from rendering a proper verdict. *Held,*

1st. That this juror could not be asked by the traversers if he had made up his mind, from what he had heard or read, that there was a riot or unlawful assembly at the time and place mentioned in the indictment, not only because the juror had testified that he was without bias or prejudice for or against the accused, but also because if the juror had formed the opinion that there had been an unlawful assembly, it did not follow that he had an opinion as to the guilt or innocence of certain persons charged with participation therein.

2nd. That the traversers were not entitled to ask said question in order to enable them to act intelligently in the exercise of their right to strike names from the panel, because if the question were answered in the affirmative it was immaterial, and if in the negative, the answer would indicate the juror's belief in the innocence of the defendants, who would then have no ground of complaint.

Upon the trial of an indictment for unlawful assembly, one of the defendants having testified in chief, the prosecution offered to contradict him by a printed letter written by him and published in a newspaper in another State. The witness admitted that the printed letter was a substantially correct reproduction of what he had written and that the original was not in his possession. *Held,* that after these admissions, the letter was competent evidence for this purpose, although the original was not produced nor its loss accounted for.

Appeal from the Circuit Court for Allegany County (BOYD, C. J., and SLOAN, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE and SCHMUCKER, JJ.

*David J. Lewis* (with whom was *James A. McHenry* on the brief), for the appellants.

*Isidor Rayner, Attorney-General,* for the appellee.

FOWLER, J., delivered the opinion of the Court :

The traversers, with others, were indicted in the Circuit Court for Allegany County, and were convicted on the second count of the indictment of unlawful assembly at the town of Lonaconing.    They were duly sentenced by the Court below, and have appealed.    During the course of the trial two exceptions were taken by them.    We will briefly consider the questions thus presented.

(1.) The first exception is to the refusal of the Court to allow the following question to be asked of John W. Jackson, one of the jurors, on his *voir dire.*

" Q. Have you made up your mind, concluded from what you read in the newspapers and from what you heard, that there was a riot or unlawful assembly in Lonaconing on the night of June 22nd ?"

Before this question was asked the juror had been interrogated by the Court as follows :

" Q. Have you formed or expressed any opinion as to the guilt or innocence of any or either of these parties ?

A.  I have not.

Q.  Do you feel that your mind is perfectly free and clear from all prejudice or bias of any kind that might prevent you from rendering a proper verdict ?

A.  I think so."

At the conclusion of this examination, the Court pronounced the juror competent, and he was sworn.

It has long been settled in this State and many others, that opinions formed upon rumor or newspaper reports do not necessarily disqualify a juror.    All that is required is " that he shall be without bias or prejudice for or against the accused, and that his mind is free to hear and impartially consider the evidence and to render a verdict thereon without regard to any former opinion or impression existing in his mind " so formed on rumor or newspaper reports.    *Garlitz* v. *State,* 71 Md. 300. In the case just cited former CHIEF JUDGE ALVEY said for this

Court, "A man cannot readily divest his mind of former impressions without reason or evidence therefor, and render his mind a blank at his mere will.   It was, therefore, quite natural for these talesmen to say that it would require some evidence to change their former impressions.   Indeed, such must be the case, to a more or less extent, in all instances where jurors are sworn who had previously formed opinions or impressions in regard to the case upon rumor or newspaper reports.   But it does not follow that such condition of mind renders the juror incompetent."   In *Waters* v. *The State*, 51 Md. 430, it was said " that the opinion which should exclude a juror must be *a fixed and deliberate one, partaking, in fact, of the nature of a prejudgment."*   It was entirely immaterial, therefore, whether the juror had formed an opinion from what he had read in the newspapers and from what he had heard, if, as he had already declared in answer to the questions put to him by the Court, his mind was *perfectly free and clear from all prejudice or bias of any kind* that might prevent him from rendering a proper verdict.   But in addition to this view it appears manifest to us that the question was improper, for conceding that the juror had formed an opinion that there was such an unlawful assembly, it, by no means, follows that he necessarily had an opinion upon the guilt or innocence of certain persons charged with participating therein, any more than a juror would be disqualified in a capital case because he has formed an opinion that a person has been killed.   One who believes that a person has been killed does not necessarily have an opinion upon the guilt or innocence of the accused.   *Thompson and Merriam on Juries*, sec. 217, p. 231.   If, on the other hand, the juror had formed an opinion that there never had been such an unlawful assembly, the defendants could not have been injured, for if there was no such assembly the defendants could not have been convicted.

(2.) But in the second place it was contended that the defendants were entitled to ask this question to test the juror's mind and to inform themselves so that they could act intelligently in the selection of a jury, and in exercising their right

to strike from the panel four names.   If we are correct, how-
ever, in what we have already said, the question asked was
not proper nor pertinent to determine the qualification of the
juror; nor do we think it was proper or pertinent to enable
the defendants to strike from the list.   If, as we have said, it
is immaterial to a fair trial of the issue that the juror had an
opinion that there was an unlawful assembly, it was not nec-
essary for a fair trial that the defendants should ascertain the
juror's opinion on that fact, any more than his opinion on
many other facts that have no necessary relation to the issue
to be tried, to wit, whether the defendants were guilty of an
unlawful assembly.   If, on the other hand, the juror had so
formed an opinion that there was no such unlawful assembly,
and had so answered, he would clearly have been disqualified,
if that opinion had been a fixed and deliberate one, for such
an opinion would have been equivalent to a judgment in favor
of the innocence of the accused.   In other words, the ques-
tion is susceptible of only two answers, either that a fixed
opinion had been formed that there was, or that such an opin-
ion had been formed that there was not an unlawful assembly.
The first answer embodies a fact immaterial to the issue, and
the second in effect declares that the juror believed the ac-
cused to be innocent.   In neither case will the accused be
heard to complain—for they have no right to ask a question,
the answer to which is immaterial, nor to object to the swear-
ing of a juror who declares his belief in their innocence.

But without further elaboration of this question it is suffi-
cient to say that conceding the right of the accused to ask
pertinent and proper questions on the *voir dire* in order to ex-
ercise intelligently and legally (*Hamlin* v. *State*, 67 Md. 337),
their right to strike from the list, we are all of opinion that
for the reasons given no error was committed by the ruling
complained of.

(3.) The remaining exception relates to the admissibility of
certain testimony which was admitted by the Court below
against the objection of the defendants under the following
circumstances.   The defendant Warner having testified on

examination-in-chief to the effect that the crowd which was assembled at Lonaconing on the occasion mentioned in the indictment, was neither angry nor unruly, and that he had not used certain language derogatory to the character and habits of the speaker who addressed the meeting nor of his audience, he was asked by the State whether he had not written a report or a letter describing the meeting which was printed in a newspaper published in Indiana. He replied that he had made such a report to the newspaper indicated, and that the printed letter or report which was then offered in evidence for *the purpose of contradicting him* was no doubt the letter he wrote to the paper mentioned, but that he could not tell whether it was correct word for word, because he did not preserve a copy of the original. It is perfectly apparent, indeed it is conceded, that this printed letter contradicts the witness flatly, but the contention is that the original which was sent by the witness out of the State " was not produced, its loss was not accounted for or even alleged, and that the newspaper statement was not shown to be a *correct* copy." This position, however, entirely ignores the testimony of the witness to the effect that the printed letter offered in evidence was substantially a correct reproduction of what he had written, and that the original was not in his possession, but beyond the jurisdiction of the Court. It is clear, therefore, that independent of the question as to whether the original letter written by the witness, was correctly reproduced in the printed copy, the latter was admissible to contradict him, he having admitted its correctness, and that inasmuch as the original was conceded not to be in his possession, but beyond the jurisdiction of the Court, it would have been folly to give him notice to produce it. Nor was it possible in a criminal case to get possession of the original letter either by commission or otherwise. *Young* v. *State,* 90 Md. 588. The printed letter, therefore, was admissible for the purpose for which it was offered, namely, to contradict the witness, and a general objection to it was properly overruled. *Nutwell* v. *Tongue,* 22 Md. 443; *Pegg et al.* v. *Warford,* 7 Md. 607.        *Judgment affirmed.*

(Decided December 13, 1900.)